```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

    -against-                          MEMORANDUM & ORDER
                                       22-CR-0180(JS)
PERRY FRANKEL,

           Defendant.
---------------------------------X
APPEARANCES
For United States:       Patrick J. Campbell, Esq.
                         United States Attorney's Office
                         Eastern District of New York
                         271-A Cadman Plaza East
                         Brooklyn, New York 11201

                         Kelly M. Lyons, Esq.
                         United States Department of Justice,
                         Criminal Division
                         970 Broad Street
                         Suite 700
                         Newark, New Jersey 07102

For Defendant:           Timothy Sini, Esq.
                         Michal E. Cantor, Esq.
                         Neil Patrick Diskin, Esq.
                         Nixon Peabody LLP
                         275 Broadhollow Road
                         Suite 300
                         Melville, NY 11747
```

SEYBERT, District Judge:

Perry Frankel ("Defendant") moves: (1) to compel the discovery of purported Brady material; (2) to quash the Government's grand jury subpoena; and (3) for a bill of particulars relating to the Government's charges. (See Motion, ECF #39.) For the reasons below, Defendant's: motion to compel the discovery of purported Brady material is DENIED; motion to quash the

1

Government's Grand Jury Subpoena is GRANTED; and motion for a bill of particulars is GRANTED in part and DENIED in part. The Government is directed to provide Defendant with a chart as described infra.

BACKGROUND[1]

I.  Summary of the Grand Jury Subpoena and Indictments

On or around March 30, 2022, Advanced Cardiovascular Diagnostics, PLLC ("Advanced Cardio"), a company owned by Defendant, was served a grand jury subpoena ("Subpoena") seeking records relating to the Defendant's business and billing practices from March 1, 2020 through the date of the Subpoena's service. A few weeks later, on April 19, 2022, Defendant was charged by a three-count indictment with health care fraud (the "First Indictment"). (See ECF # 1.) On June 27, 2023, Defendant was charged by a seven-count superseding indictment with health care fraud and engaging in unlawful monetary transactions (the "Superseding Indictment" or "S-1"). (See ECF # 35.) On September 30, 2022, the Subpoena issued to Advanced Cardio expired. (Opp'n, ECF #42, at 16).

---

[1] The facts are recited as relevant to the Court's analysis and are drawn from the Case Docket, the Indictments, and the parties' submissions relative to the instant motion. Citations to "DX" refer to the Defendant's Exhibits.

The alleged criminal scheme arises in connection with Defendant's operation of mobile Covid-19 testing sites ("Mobile Testing Sites") during the Covid-19 pandemic. In particular, the Government alleges that Defendant fraudulently submitted billing claims to Health Care Benefit Programs[2] for services rendered to persons who received Covid-19 tests at Mobile Testing Sites. According to the Government, Defendant billed for "evaluation and management" services which were "medically unnecessary, not provided as represented and illegible for reimbursement." (S-1 at 9.) For some of the billing claims, the Government alleges Defendant was not present in New York State on the date those services were purportedly provided. (Id.)

Defendant billed $17 million in allegedly fraudulent claims, resulting in his receipt of approximately $3 million in payments from Health Care Benefit Programs. Id. Defendant is also charged with engaging in unlawful monetary transactions by using the proceeds of the alleged scheme to make purchases in amounts greater than $10,000. (Id. at 11.)

II. Procedural History

    a. Discovery

The parties agree the Government has produced voluminous discovery in this matter. (Support Memo, ECF # 39-18, at 2; Opp'n

---

[2] The term "Health Care Benefit Programs" as defined in the Superseding Indictment is used herein.

3

at 12.) In particular, the Government has provided Defendant with: (1) the names of the five individuals whose insurance claims are charged in the Superseding Indictment; (2) the initials, dates of service, location of service, and insurance information for an additional beneficiary the Government may call at trial; and (3) over a dozen spreadsheets, totaling nearly 310,000 pages, which catalogue hundreds of thousands of patient claims, identified by claim number and date, and at least one of which contains diagnosis codes, procedure codes, and payment status information. (Support Memo at 15, n.6; Opp'n at 12-13).

      b. <u>Meetings Amongst the Parties</u>

Throughout November and December 2022, the parties discussed Defendant's belief that, during the Covid-19 pandemic, he was not required to be present in New York State in order to bill for services rendered by non-physician practitioners working under his remote supervision. This was due to a change in applicable regulations, which Defendant calls the "Supervision Rule Change". Following the November and December 2022 discussions, in January 2023, the Government interviewed its experts about the Supervision Rule Change, and subsequently produced documents memorializing those interviews. (DX 11, 12.)

III. The Instant Motions

Defendant now moves: (1) to compel the discovery of purported Brady material; (2) to quash the Government's Subpoena; and (3) for a bill of particulars relating to the Government's charges. (See Support Memo.) In particular, the Defendant seeks the following:

(A.) "Brady" Material: All information and material relating to the Supervision Rule Change, including but not limited to:
  (1) When the prosecutors first learned of the Supervision Rule Change;
  (2) When the prosecutors first discussed [said change] with anyone else, including each other, supervisors, Franco [Government's case agent], other government officials, witnesses, etc.;
  (3) The content of those communications;
  (4) The views, opinions, and/or positions of government officials regarding the Supervision Rule change and its implementation and/or enforcement; and
  (5) Contact information for government employees who have provided an opinion or view on the Supervision Rule change, or who have told the Government that they were not aware of it.

(Id. at 13.)

(B.) <u>An Order Quashing the Subpoena</u>: "if the term of the grand jury has expired and . . . regardless of whether the grand jury term has expired, because the Subpoena improperly seeks information in preparation of trial." (<u>Id.</u> at 23.)

(C.) <u>Bill of Particulars</u>: "identifying each claim it intends to prove was fraudulent, including the date of service, the claim number, the patient's name, the services and amount billed, the payor, the amount paid, and the reason why the Government is alleging the claim is fraudulent." (<u>Id.</u> at 19.)

<u>DISCUSSION</u>

I.  <u>Motion to Compel "Brady" Material</u>

Defendant moves for an order compelling the production of all <u>Brady</u> material relating to the Supervision Rule Change, including all communications "by and among government officials . . . who have provided an opinion or view on the Supervision Rule Change, or who have told the Government that they were not aware of it." (<u>Id.</u> at 10.) Defendant contends the Government is obligated to provide this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), because "it is likely that during those communications, government[] officials expressed their ignorance of the Supervision Rule Change or their views on its interpretation." (<u>Id.</u> at 12.) The Government's purported ignorance on the

6

Supervision Rule Change is "highly probative" according to Defendants, because it "shows how easily a physician or billing specialist could be confused by and/or unaware of the unprecedented number of regulatory changes and CPT coding rules that were constantly being implemented and adjusted during the course of the pandemic." (Id.) The Defendant seeks to use the Government's purported ignorance as to the Supervision Rule Change to show "that it is not reasonable to infer criminal intent from not complying with a complicated, ever-changing set of rules that the Government cannot even get right." (Id.)

The Government counters Defendant's arguments, noting the allegations in the Superseding Indictment do not concern whether Defendant supervised his personnel during the relevant time period. (Opp'n at 5.) According to the Government, "the defendant is not charged with committing health care fraud simply because he was not present at . . . COVID-19 mobile testing sites or because he violated regulations. . . . [H]e is charged with billing $17 million to federal health care programs for services that were not provided either by him, as the claims to Insurers represented they were, or his employees, whom he claims he supervised." (Id.) The Government further argues "[i]nternal government documents prepared in connection with prosecuting a case . . . are explicitly exempt from disclosure under Federal Rule of Criminal Procedure 16" and, to the extent Defendant

7

requests documents from other governmental agencies, such documents are not in the Government's "possession, custody, or control" and thus are not subject to disclosure. (Id. at 7-8.)

### A. Legal Standard

"The basic rule of Brady is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001). Accordingly, a Brady violation occurs only where the Government fails to turn over evidence that "could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. (collecting cases); United States v. Schlesinger, 439 F. Supp. 2d 255, 257 (E.D.N.Y. 2006) ("Information is material under Brady if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (internal quotation marks and citations omitted); United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995).

B. Analysis

The Court finds the information sought by Defendant does not meet the materiality requirements of Brady, and accordingly need not be disclosed. It bears repeating that Defendant is charged with health care fraud by billing for medical procedures that were either unnecessary or not provided at all. (S-1 at 9.) While the Superseding Indictment does briefly mention that the Defendant was not in New York State at the time some of the alleged fraud took place, (id.), there is no allegation in the Indictment that the fraud occurred because the Defendant was not in New York State or because he remotely "supervised" his personnel as they rendered services to patients. Accordingly, discovery on the Supervision Rule Change, a rule that permitted Defendant to remotely supervise his staff, is not "material to either guilt or punishment" because it does not bear any relation to the charges alleged. Coppa, 267 F.3d at 139; see United States v. Garcia, 936 F.3d 648, 655 (finding discovery immaterial as it related to an issue not in dispute at trial). Moreover, the Government's own view of one of the many regulations applicable to Defendant and his practice during the pandemic is irrelevant to Defendant's own state of mind consistent with the charges alleged. Defendant is the person charged with healthcare fraud, not the Government. Defendant's mens rea is the only mens rea that bears any relation to the outcome of this case.

9

Because the Court finds the requested discovery is immaterial under Brady, it need not address the parties' other arguments on this issue. Accordingly, Defendant's motion to compel discovery of Brady material is DENIED.[3]

## II.  Motion to Quash Subpoena

Defendant moves to quash the Subpoena issued to his company, Advanced Cardio, for two reasons. First, Defendant alleges the Court does not have jurisdiction to enforce the Subpoena after the grand jury's term expired. (Support Memo at 21.) Second, Defendant alleges the Subpoena improperly seeks information in preparation of trial. (Id. at 22.) The Government counter-argues that, as of the date of its filing, the Subpoena had not expired. (Opp'n at 15.) It further alleges that the timing of the service of the Subpoena indicates that it was not issued for an improper purpose, since it was issued almost three weeks before the First Indictment and more than year before the Superseding Indictment. (Id. at 16-17) Therefore, the Subpoena was not issued for the sole or dominant purpose of preparing for trial. (Id.)

---

[3] To the extent Defendant seeks to exclude evidence concerning his compliance or lack of compliance with the Supervision Rule Change, or his whereabouts during the provision of services, Defendant may seek such exclusion by filing a pre-trial motion in limine.

A. Legal Standard

"Any order to produce evidence pursuant to an expired grand jury's subpoena is void." In re Grand Jury Proceeding, 971 F.3d 40, 51 (2d Cir. 2020) (citing Loubriel v. United States, 9 F.2d 807 (2d Cir. 1926)) (internal quotation marks omitted) (emphasis added). This is because "the duty imposed by a subpoena to produce documents to, or to testify before, a specific grand jury ceases once that grand jury's term expires." Id. at 50 (noting this is "long-standing precedent" in the Second Circuit).

B. Analysis

Here, the Government concedes that the grand jury term expired on September 30, 2023, eighteen months after the Subpoena was issued. (Opp'n at 16.) Accordingly, on September 30, 2023, Advanced Cardio's duty to comply with the Subpoena ceased, and this Court was divested of jurisdiction to enforce the Subpoena. For that reason, the Defendant's motion to quash is GRANTED, and the Court need not address the parties' additional arguments.[4] Notwithstanding the foregoing, the Court acknowledges that the Government reserves its right to issue a trial subpoena pursuant to Fed. R. Crim. P. 17.

---

[4] Notwithstanding the foregoing, the Court acknowledges that the Government reserves its right to issue a trial subpoena pursuant to Rule 17 of the Federal Rules of Criminal Procedure.

11

III. Motion for a Bill of Particulars

Defendant contends his requests for particulars are warranted because the Superseding Indictment only specifies five claims of allegedly fraudulent billing, totaling $1,150, whereas the Defendant is charged with effecting $17 million in fraudulent claims. According to Defendant, the "defense is thus left to guess as to what [other] specific claims the Government will attempt to prove" were fraudulent at trial. (Support Memo at 14.) Moreover, Defendant argues that he is entitled to information on the "manner in which such claims were purportedly fraudulent" because the Government has alleged "both that no services were provided and also that services were medically unnecessary." (Reply, ECF # 43, at 8, 9.) In response, the Government argues Defendant has already been provided with information concerning the identity of the six beneficiaries whose claims may be presented to the jury at trial, and, to the extent Defendant seeks "early disclosure of which additional claims the government intends to prove at trial," such disclosures will be made at least sixty days before trial, pursuant to the Court's July 18, 2023 Order (see ECF #36). (Opp'n at 14-15.)  Moreover, the Government argues that in situations where it alleges all billing claims are fraudulent, a bill of particulars is not necessary. (Id. at 14.)

12

A. <u>Legal Standard</u>

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars to enable him to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987); <u>United States v. Wilson</u>, 493 F. Supp. 2d 364, 369 (E.D.N.Y. 2006). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." <u>United States v. Chen</u>, 374 F.3d 151, 163 (2d Cir. 2004) (quoting <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999)) (internal quotation marks omitted). Thus, "[t]he applicable standard for whether a bill of particulars should issue is not whether the information sought would be helpful to the defense, but whether it is necessary." <u>United States v. Taylor</u>, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014), <u>aff'd</u>, 802 F. App'x 604 (2d Cir. 2020). The defendant bears the burden of showing "the information sought [in a bill of particulars] is necessary and that [the defendant] will be prejudiced without it." <u>United States v. Donovan</u>, No. 20-CR-374, 2021 WL 5819915, at *4 (E.D.N.Y. Dec. 6, 2021) (quoting <u>United States v. Fruchter</u>, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000) (internal quotation marks omitted)).

To determine whether a bill of particulars is warranted, courts may look "beyond the four corners of the indictment" and "determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, [and] responses made to requests for particulars." United States v. Barrett, 153 F. Supp. 3d 552, 571 (E.D.N.Y. 2015) (citing United States v. Strawberry, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). Accordingly, a bill of particulars is unnecessary where "the indictment and/or pretrial discovery provide the defendant with sufficient information as to the nature of the charges." United States v. Drivas, No. 10-CR-0771, 2012 WL 3011023, at *2 (E.D.N.Y. July 19, 2012) (citing United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (further citations omitted)). "The Government, however, does not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided as to the nature of the charges pending." United States v. Wey, No. 15-CR--611, 2017 WL 237651, at *18 (S.D.N.Y. Jan. 18, 2017)(citing United States v. Lino, 00-CR-0632, 2001 WL 8356, at *4 (S.D.N.Y. Jan. 2, 2001) (further citations and quotation marks omitted)). The decision of whether to grant or deny a motion for a bill of particulars rests within the sound discretion of the district court and is reviewed only for abuse of discretion. United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); United States v. Ramirez,

14

609 F.3d 495, 502 (2d Cir. 2010); United States v. Barrera, 950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013).

### B. Analysis

As discussed supra, the Defendant seeks "[a] bill of particulars identifying each claim it intends to prove was fraudulent, including the date of service, the claim number, the patient's name, the services and amount billed, the payor, [and] the amount paid" (hereafter, the "Claim Particulars"). (Support Memo at 19). The Defendant further requests particulars concerning "the reason why the Government is alleging the claim is fraudulent" (hereafter, the "Fraud Particulars"). (Id.) The Court addresses the two categories of requests below.

#### 1. Request for Claim Particulars

A bill of particulars is unwarranted, where, as here, the information sought has already been provided to the Defendant either in the indictment or through discovery. United States v. Barrett, 153 F. Supp. 3d 552, 573 (E.D.N.Y. 2015) (denying request for a bill of particulars where "the information provided in the indictment coupled with the information provided to defendant in discovery appears more than adequate to permit [defendant] to mount an effective defense"); United States v. Strawberry, 892 F. Supp. 519, 526 (S.D.N.Y. 1995) ("In deciding whether a bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other

15

items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself.").

In this instance, in his moving papers Defendant made clear that he is already in possession of all of the requested Claim Particulars. In his opening brief, Defendant stated that the Government produced spreadsheets including "patient demographic information, date of service, diagnosis code, procedure code, [and] payment status, among other information." (Support Memo at n. 6). Moreover, Defendant's claim that the "defense is . . . left to guess as to what specific claims the Government will attempt to prove" were fraudulent, is unavailing. (Id. at 14). The Government indicated, both in the Superseding Indictment and its opposition, its intention to prove at trial that all claims for Covid-19 testing at mobile sites submitted for evaluation and management visits under CPT codes 99202, 99212, and 99213 were fraudulent. (S-1 at 8-9; Opp'n at 14). Under these circumstances, a bill of particulars is not necessary because the Defendant is on notice of the Government's allegation that _all_ claims meeting the aforementioned criteria are fraudulent. United States v. Steiner, No. 19-CR-0295, 2022 WL 2390943, at *4 (E.D.N.Y. July 1, 2022) ("[A] bill of particulars is unnecessary to identify which prescriptions are alleged to be fraudulent as they are _all_ alleged to be fraudulent."); United States v. Shteyman, No. 10-CR-0347, 2011 WL 2006291, at *4 (E.D.N.Y. May 23, 2011) (denying request

16

for bill of particulars where the Government alleged the defendant's "only business was to bilk the Medicare program"); United States v. Rose, No. 19-CR-0789, 2021 WL 2117119, at *15 (S.D.N.Y. May 24, 2021) (noting there is no "needle in a haystack problem" where the Government contends that all actions were fraudulent).

The Court recognizes Defendant may have received information during the course of discovery concerning procedures that do not relate to COVID-19 visits at mobile sites billed under CPT codes 99202, 99212, and 99213. This does not, however, necessitate a bill of particulars, because Defendant is nonetheless aware that he is not charged with fraudulent acts unrelated to Covid-19 visits billed under such codes. That is precisely what distinguishes the request for Claim Particulars from the request in United States v. Bortnovsky. 820 F.2d 572 (2d Cir. 1987).

In Bortnovsky, defendants were indicted on various charges related to their alleged submission of false claims for burglary losses. 820 F.2d at 574. In the indictment, the Government failed to specify the dates of the burglaries or enumerate which of the documents were falsified. Id. The Second Circuit held defendants were "hindered in preparing their defense" because they failed to receive crucial information concerning the dates of the fake burglaries and the identity of the allegedly fraudulent documents. Id. The failure to particularize which burglaries were

17

allegedly fraudulent in effect shifted the burden of proof to the defendants to prove certain claims of actual burglaries were not fraudulent. Id. at 575. Unlike the Defendants in Bortnovsky, here, Defendant knows exactly which claims the Government alleges are fraudulent. Accordingly, Defendant's request for Claim Particulars is DENIED.

### 2. Request for Fraud Particulars

Notwithstanding the foregoing, the Court finds it appropriate for the Government to designate which of the alleged fraudulent claims were "not provided" and which were "medically unnecessary." (See S-1 at 9.) Although the Government has provided Defendant sufficient notice of which claims were alleged to be fraudulent, (see supra), it has not provided Defendant with sufficient notice concerning how those claims are fraudulent. United States v. Vaid, No. 16-CR-0763, 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) (ordering the Government to identify, by 60 days prior to trial, "the [allegedly fraudulent] claim and whether the goods or service was not provided or was medically unnecessary"); United States v. Nachamie, 91 F. Supp. 2d 565, 574 (S.D.N.Y. 2000)(ordering the Government to identify which of the "five possible ways the item or [medical billing] entry is allegedly false"). Accordingly, Defendant's request for Fraud Particulars is GRANTED. At least sixty days before trial, the Government is to provide to Defendant

18

a chart containing all claims that the Government intends to prove were fraudulent, and denoting whether the services were not provided or were medically unnecessary.

## CONCLUSION

Accordingly, it is HEREBY ORDERED, for the reasons stated herein, Defendant's: motion to compel the discovery of purported Brady material is DENIED; motion to quash the Government's Grand Jury Subpoena is GRANTED; and motion for a bill of particulars is GRANTED in part and DENIED in part. The Government is directed to provide Defendant with a chart consistent with this Memorandum and Order.

SO ORDERED.

/s/      JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October 26, 2023
Central Islip, New York